All right, our second case for this morning is Bogart v. Vermilion County, and Ms. O'Connor, ready for you. Good morning, your honors. May it please the court. My name is Yvonne O'Connor, and I represent appellant plaintiff, Ms. Bogart, in this matter. This is a wrongful termination case where defendants terminated Ms. Bogart because of her political affiliation and her running for office of county recorder in 2012 election. Plaintiff is seeking reversal of district court's grant of a summary judgment in favor of defendants on her First Amendment claim, and plaintiff is also seeking reversal of district court's dismissal of her equal protection claim with a prejudice. This case presents two questions. First, whether the defendant carried a burden to establish that a political affiliation was a job requirement for the finance resource director position that plaintiff had held with the county to warrant the district court's ruling that the position was a policymaking position under the Allot Friendly Exception as a matter of law, and second, whether plaintiff failed to state a claim under the equal protection clause of the United States Constitution based on her party affiliation. Let me quickly outline for you what I think maybe are your two biggest hurdles. There was not one, not two, but three. There were three job descriptions of varying levels of formality, I understand, but three job descriptions in this record, one of which she drafted herself, the latest one, also the 2007 one that was in place, also the original one that had been adopted. And they all indicate quite substantial authority over budgeting. I don't know if you've ever drawn up a budget, but there's a lot of wiggle room in budgets, you know, where are you going to put things, and there's a certain momentum once there's a budget. So it's hard for me to look at that set of responsibilities and not think this is a very high-level position from the financial side of things. So that's problem A. Problem B for me is even if I were to agree with you that the district court judge didn't quite understand what you were arguing on the equal protection point, And even though I can conceive of hypotheticals where if you were dividing the world up into Democrats and Republicans, you know, the Harold Washington Library couldn't say we issue library cards only to Democrats, and you know, the Grant Park people couldn't say only the Republicans in the city get to go enjoy Grant Park. I mean, that would be an irrational, a failed rational basis test. But in this case, even if we thought that there was a test higher than rational basis, the very same considerations that lead to the Elrod Branty exception indicate that if you are a politically elected CEO of whatever, you know, you're the head of the county or something, you need someone of a compatible philosophy to be working for you. That's the gut insight under the Elrod Branty thing. So I'm not sure that it helps you to recast this, even though I can imagine cases where one could have impermissible classifications based on political party. But I'm not sure yours is it. Okay. I will address the first issue you have, Your Honor, regarding the three job description. That actually hurt the defendant's argument. It doesn't help the defendant's argument that the political affiliation was a job requirement and the job description... But they're not that different, are they, in this critical respect? Yes, but under the Elrod Branty test, the court first should find whether the job description is reliable or not. As you mentioned, there are three job descriptions. The first one is 1985 one with a title with financial resource manager. And that is, in plaintiff's point of view, that is the only reliable job description because it was passed along with the resolution by the county board. Can I ask you about that, though? At your client's deposition on pages 19 and 20, she pretty clearly seems to have authenticated the 2007 job description. And then there's a series of questions that are asked of her going through that job description. Is this correct? Is this accurate? And to the question, she answers yes, that's correct. Your Honor, as to the 2007 job description, she acknowledged that she recognized the document, that authenticated document. But it does not replace the inquiry that the court should have asked under the Elrod Branty test because that just authenticated the question. But the test under the Elrod Branty inquiry is that the court should focus on how it was created, how it was updated, and how it was kept realistic. Why isn't the ultimate focus just isn't this what the job is? Because that's the point. Again, as I said, people don't lose their political rights in general. And we have long lines of patronage cases, both at the Supreme Court level and in this circuit. But the court has recognized that if you're the governor of Illinois, you're entitled to have your primary assistant be of your same political party. There's just too much discretion in the job somehow. I disagree with your position, Your Honor. And respectfully... Really? Does Governor Rauner have to have a Democrat as his... No, I don't think... I'd be very surprised to learn that. No, I don't disagree with that statement. But our client's job, there is a dispute of material facts as to the scope of authority and discretion given to the office. And as to her testimony in the deposition, she actually disputed a lot of the functions listed on the job description. I view this whole fight about which job description controls as completely irrelevant here. This position is under the county board and the finance committee in particular, correct? Reports to the finance committee and ultimately to the chairman of the county board, right? Yes. And it's the budget director position, right? And so it exists to implement the policy of whoever is in control of the county board and the finance committee at the relevant time. That's clearly a political appointment, a political position, because whoever occupies that position has to implement the policy of the policy of the party in power through the budget. That's just as self-evident regardless of this whole fight about which of the three job descriptions accurately states the functions day-to-day of this particular political officer. It's clearly a political position. This is a cabinet officer in county government, which is run by the board chairman, and as to financial matters, the finance chairman. So that person can be hired and fired at will according to political affiliation. But that's not what she said even herself. I mean, I can't find anything in this record that contradicts what Judge Sykes just said. And it's not the United States. It's some county in Illinois. But still, counties run themselves. They have political structures. And her own description of what she's doing struck me as infused with policy. But she clearly testified that she put the numbers together. Well, he was fine with her, but he exercised his discretion to keep her. Why does that mean that the next chairman couldn't exercise his discretion to replace her? No, we are not disputing that. He is free to replace her. It was at will employment anyway. But the board chairman, the former board chairman, clearly testified that political affiliation was not a job requirement for the financial resource director position. And he also testified that the different political affiliation from his didn't interfere with her ability to perform her duty as a financial resource director. That's irrelevant. That's completely irrelevant to the legal inquiry here. What's important is whether this is a political policymaking position. And if so, it's exempt under the Elrod Branty formula. But Your Honor, district court opened the door for all other evidence to come in by relying on the 2012 memorandum that was drafted by Plaintiff herself. This is not the official job description, and this is actually the actual function she performed. But she didn't give the same weight to the evidence, all evidence on the record. And there is a dispute of material fact when you consider the evidence on the record as a whole. And there is no explanation. The defendant failed to provide a single explanation as to where the 2007 job description came from. And this lack of background information regarding this 2007 job description that district court heavily relied on, not only make this job description unreliable under the Elrod Branty test, but also raise a question of its evidential value, whether it is admissible evidence at all, because the lack of a foundational background makes this evidence hearsay. And as moving to the equal protection claim, the plaintiff... District court found the exhibit admissible, correct? I'm sorry? Yeah, the district court found the... Found that it was sufficiently, this is footnote three of the opinion. It was admissible because the plaintiff acknowledged... Because it was sufficiently authenticated by the plaintiff. Yes. But it's authenticated, but it doesn't still have to, the defendant also have to overcome the harder of a hearsay rule to have it admitted on the record. And the plaintiff's equal protection claim is not just limited to her exercise of First Amendment right in her... No, and I was giving you the benefit of the doubt on that, but I was also saying that if Elrod Branty means anything, it means that there is a rational basis or maybe even a compelling interest or some intermediate standard, pick your standard. But there is an acceptable reason, I'll just say, to distinguish on the basis of the classification of political party for a high level political position. And that's, we can fix the district judge's error and save that debate for some case where it really matters. But for these high level people, it's hard for me to see how it helps you to recast your theory. Because it was dismissed with a prejudice and the plaintiff was not granted an opportunity even to conduct the discovery... This is not a factual issue, it's a legal issue, so the leave to amend argument is not going to get you very far. But plaintiff actually clearly alleged in her First Amendment complaint that her membership to a certain political party was the reason why... However, we haven't gotten to the point whether the exception or the rational basis will actually save the defendant's position as to their not liable under the Equal Protection Claim. If the Supreme Court has endorsed it as a defense to a First Amendment violation, surely it is a rational basis for the differential treatment under the Equal Protection Clause. As Chief Judge Wood has just pointed out, it's a legal issue, it doesn't require new facts in an amended complaint. But the District Court itself acknowledged that there is a gray area. This is not a set precedent in this political affiliation in the First Amendment and the Equal Protection Clause case. Right, but even giving you the benefit of the doubt of that gray area, this would be a complete defense. The fact that this is a political partisan position that shifts with the political partisan shifts on the County Board. I have to dispute that. The evidence as a whole on the record clearly indicates that the defendant didn't come up with any evidence. I think we have your position between the briefs and this argument, so thank you very much. Thank you. Ms. Wojsacki. Thank you, Your Honor. Good morning. May it please the Court. This Court should affirm the District Court's grant to summary judgment in the defendant's favor. I think Your Honors have picked up on exactly the problems with the plaintiff's case. This case concerns whether the Elrod Branti exception applies to the financial advisor for the County Board and the County Board Chairman. And the answer is yes. Money is inherently political. This Court has applied the Elrod Branti exception to a number of positions where the individual controlled financial decisions or had significant input into financial decisions. And it's evident by whatever job description we're using. The plaintiff just admitted that the 1985 job description was reliable. And that job description, frankly, runs through the very pieces that make the position political. So you're just saying it doesn't really matter which one we look at because the critical elements don't change? Exactly, Your Honor. Frankly, they're very similar. The 1985 description is a little shorter than the 2007 description. The 2012 description expands on the 2007. We think that the 2007 description, because the plaintiff admitted that that was the job description when she was hired, and the former chairman who hired her, McMahon, also admitted that that was the job description that was used when she was hired. We think that controls and then it's reinforced and the details are expanded in her own, the document that she created in 2012. So let me just tell you the only thing that worries me about the District Court's reasoning, at least, although perhaps not the result. I'm uncomfortable, as I think the hypotheticals I suggested indicate, with the idea that classifying on the basis of political parties is never a problem. It doesn't all just flow into the First Amendment, like my only Democrats get library cards. I agree. I think that in some situations, the Equal Protection Clause would be the appropriate vehicle. And in fact, in Voting Rights Act cases, it's raised. Exactly. And here, though, this is a little different. Here, this is a claim of political retaliation. So what she is alleging is that she was fired because of her political affiliation, because she was a Democrat, and that she was fired because she ran for the Recorder of Deeds Office as a Democrat and was unsuccessful in 2012. Those allegations are a retaliation claim. Or put differently, is the state, capital S, here the county, entitled to draw a distinction based on political party lines, based on this particular classification for this purpose? And there, I think, you'd actually almost have to overrule Elrod and Branty to say that the answer was no. Yes. And in fact, Your Honor, in Elrod, you were discussing before, you noted that the test in the Elrod case would at least provide a reasonable basis for the distinction. The court in Elrod actually went further. The court, while acknowledging the First Amendment rights of public employees, also stated that the importance of having your own policies and confidential information maintained by someone who's a political ally rises to that strict scrutiny level, that that's a compelling government interest. And therefore, no matter how you cut this, if it's a First Amendment retaliation claim, and Elrod Branty applies, or if it's a equal protection claim, this would satisfy strict scrutiny. So in either event, the plaintiff, it will be unsuccessful. Yeah, I mean, I just think it's important, perhaps not for this case ultimately, but generally to keep those theories understood as to what they are. Understood. One of the things I wanted to touch upon, because I don't think it was, it wasn't well brought up in the briefs, and I just wanted to touch upon it, is the defendant's qualified immunity argument. Defendant Mike Moran was sued in his individual capacity as well, and this is an argument that we brought up in summary judgment, and the district court did make a finding that he was entitled to qualified immunity. We brought it up in our brief, but the plaintiff did not respond to it, and I just want to provide it as an alternative basis that Mike Moran is entitled to qualified immunity. The plaintiff has not cited any case which establishes that someone who provides financial advice to the county board chairman and the county board could not be fired for political reasons. The other piece I wanted to address concerns the county's anti-discrimination policy, which was raised below, and I just wanted to address it, because there is a state statute, the Local Government Employees Political Rights Act, that the plaintiff relies on in their brief, and the county's internal policies. Article 19 of the county's internal policies is a general anti-discrimination that no employee should be retaliated against for political reasons. It's our position that the anti-discrimination and the more general statements in the county personnel policies, that it doesn't change the job description. So you would agree, I take it, that if she had been a clerical person working for the county and had run, as she did, unsuccessfully for office as a Democrat, she couldn't have been fired for that. Certainly. Certainly. If the county's personnel policy that is just a general anti-discrimination rule, or even if the Illinois Political Rights Act was applied to redefine or to supplement the job description, the result would be overly broad. It would essentially negate the L. Ron Branty exception in Illinois and Vermilion County, and we think that that is not an outcome that this court has ever embraced. Do we have any other questions? Okay. Well, thank you very much. It's our position that this court should affirm the district court's grant of summary judgment in defendant's favor. All right. Thank you very much. Your time ran out, Ms. O'Connor, but I'll give you one minute if you would like to summarize your position. Yes, Your Honor. Thank you. So the fact that the district court and the defendants all together have to cobble up three different documents to paint their position that there is a reliable job description that warrants the ruling that the position was a policymaking one as a matter of law clearly shows that it's self-defeating. And by relying on 2012 job memorandum that was drafted by a plaintiff, the district court and the defendant alike opened the door for other extrinsic evidence to come in. So accordingly, we ask this court to look at the other evidence on the record and give the same weight and find that there is a dispute of material fact as to the authority and the discretion given to the position that should have been submitted to the jury. And accordingly, we respectfully ask this court to reverse this court ruling. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.